| ..CARTER, C.J.
This case involves an appeal from a decision of the Louisiana Board of Ethics (Board), holding that Ferrara Fire Apparatus, Inc. (FFA) violated a provision of the Louisiana Code of Governmental Eth *763 ics (Ethics Code). After a thorough review of the record, we affirm.
FACTS AND PROCEDURAL HISTORY
On February 1, 2001, FFA placed a bid with the Houma, Louisiana, Fire Department for the manufacture of a fire truck. On February 14, 2001, Fire Chief Brian Hebert and Captain Paul Breaux traveled with an FFA salesman on a one-day trip to Alma, Arkansas, for inspection of a similar fire truck to determine if it met the fire department’s specifications and standards. FFA paid the $710 cost for Hebert’s and Breaux’s airfare as well as $65 for use of a rental car. After a private investigation, the Board ordered that a public hearing be conducted for the purpose of exploring whether FFA violated the Ethics Code (specifically LSA-R.S. 42:1117) by providing the airfare and/or rental car for Hebert’s and Breaux’s day trip to Arkansas when Hebert and Breaux were prohibited by the Ethics Code (specifically LSA-R.S. 42:1115) from receiving gifts or gratuities.
At the public hearing on November 14, 2002, counsel for the Board and FFA submitted a joint stipulation of facts to the effect that: (1) at all pertinent times, Brian Hebert was the Fire Chief and Paul Breaux was the Captain of the Houma Fire Department; (2) on February 1, 2001, the Houma Fire Department received a bid for fire trucks from FFA; (3) on February 14, 2001, while FFA’s bid was pending, FFA provided airfare ($710 value) and a rental car ($65 value) for Hebert and Breaux to travel on a one-day trip to Arkansas to view FFA’s fire trucks; and (4) in April 2002, Hebert and | oBreaux signed consent letters admitting violations of the Ethics Code by receiving airfare and use of a rental car from FFA, a potential vendor of fire trucks for the Houma Fire Department. After considering the stipulations, the testimony of FFA owner and president, Chris Ferrara, and oral arguments, the Board issued an opinion on December 12, 2002, concluding that FFA had violated the Ethics Code. The Board imposed a $500 fine against FFA, with all but $100 suspended, conditioned upon FFA’s future compliance with the Ethics Code.
FFA appealed the decision of the Board, arguing the Board erred in finding the trip was a “gift” within the meaning of LSA-R.S. 42:1115, and the Board erred in failing to find an exception to the definition in the Ethics Code for a “thing of economic value” because the trip was a “promotional item having no substantial resale value.” The essential issue for our review is whether FFA violated LSA-R.S. 42:1117 by providing airfare and rental car use for the fire chief and the captain of the Houma Fire Department while the fire department was considering a bid by FFA for the sale of fire trucks.
ANALYSIS
Judicial review of the decision of the Board is conducted in accordance with the Louisiana Administrative Procedure Act (APA). See LSA-R.S. 42:1143. The APA specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. LSA-R.S. 49:964(F). The reviewing court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the |4agency’s statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the *764 reviewing court. LSA-R.S. 49:964(G); Schmitt v. Louisiana Board of Ethics, 00-0341 (La.App. 1 Cir. 3/28/01), 808 So.2d 524, 525. On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders judgment on the record. Id.
Pursuant to our standard of review, we have made our own determinations of fact and conclude the evidence supports a finding that FFA violated LSA-R.S. 42:1117. In conducting this review, we have given due regard to the Board’s credibility determinations. Although we feel, as did the Board, that FFA’s violation was minor, we are constrained by the clear language of the Ethics Code. Thus, we have determined that the findings of fact and conclusions of law set forth in the Board’s December 12, 2002 written reasons for decision are correct.
LSA-R.S. 42:1117 provides, in pertinent part: “No ... person shall give ... to any public servant ... any thing of economic value which such public servant ... would be prohibited from receiving by any provision of this Part.” It is undisputed that Hebert and Breaux admitted a violation of the Ethics Code when they accepted the airfare and use of the rental car from FFA while the fire department was considering FFA’s bid for the sale of fire trucks. Therefore, the only issue in this case is whether the payment for out-of-state transportation was a “thing of economic value.”
A thing of economic value is defined in the Ethics Code as: “money or any other thing having economic value, except promotional items having | Rno substantial resale value; food, drink, or refreshments consumed by a public servant, including reasonable transportation and entertainment incidental thereto, while the personal guest of some person [.]” (Emphasis added.) LSA-R.S. 42:1102(22)(a).[1] FFA argues that the airfare and use of car rental was a promotional item having no substantial resale value because the one-day trip to Arkansas was for the sole purpose of promoting the FFA fire trucks. We find no merit to this argument because of the significant price ($710) FFA paid for the roundtrip airfare, which certainly had economic value. Furthermore, we do not consider such roundtrip airfare to constitute a promotional item or reasonable transportation within the meaning of the statute.
We likewise find no merit to FFA’s argument that providing transportation to Hebert and Breaux was not a “gift” within the meaning of the Ethics Code. The Ethics Code does not specifically define gift; however, the generally prevailing meaning of gift is something that is voluntarily transferred by one person to another without compensation. See LSA-C.C. art. 11. See also Merriam-Webster’s Collegiate Dictionary, Tenth Edition, 1995, p. 491. FFA admitted that it voluntarily provided the transportation to Hebert and Breaux, and FFA was not compensated for the cost of the transportation. Therefore, the airfare and car rental costs were “gifts” and were specifically prohibited by the Ethics *765 Code when, in this case, the fire | fichief and the captain knew that FFA was seeking to obtain a business relationship with the fire department.[2]
The primary objective of the Ethics Code is to prevent not only the actuality of conflicts of interest, but also to prevent the occurrence of those situations that tend to create a perception of conflicts of interest. In re Beychok, 495 So.2d 1278, 1281 (La.1986). A conflict of interest is a situation that would require an official to serve two masters, presenting a potential, rather than an actuality, of wrongdoing. The wrongdoing does not have to occur in order for a prohibited conflict to exist. Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 756 (La.1983).
While it appears to us that FFA is guilty of no actual wrongdoing, and its actions did not constitute an egregious violation, the one important objective of the Ethics Code (to prevent potential conflicts of interest) was violated when FFA paid for the fire chief and the captain to travel out-of-state to view a fire truck while the fire department was considering purchasing a fire truck from FFA. We note that in most instances, if a public entity were not involved, FFA’s action would have been a legitimate business endeavor. However, with public servants and entities, much more stringent rules apply to business dealings. What would normally be a proper and legitimate business activity can be in technical violation of the Ethics Code. FFA’s action created a public perception of a conflict of interest, 17which is what the Ethics Code is designed to prevent. See In re Marceaux, 96-1215 (La.App. 1 Cir. 2/14/97), 689 So.2d 670, 673.
Accordingly, we find no error in the Board’s decision, and we conclude that the decision is consistent with the policy and goals of the Ethics Code. The decision of the Board is hereby affirmed. Costs of this appeal are assessed to Ferrara Fire Apparatus, Inc.
AFFIRMED.
GUIDRY, J., concurs in the result.

. We recognize that the legislature made a specific exception regarding "reasonable transportation" when "organized primarily for educational or for informational purposes, including on-site inspections, ... to any point within the boundaries of this state,” but this exception is "with reference to legislators and employees in the legislative branch of state government only[.]” (Emphasis added.) LSA-R.S. 42:1102(22)(d)(i). Hebert and Breaux were not legislators or employees in the legislative branch of state government, and the transportation was not within the boundaries of Louisiana. Thus, the "reasonable transportation" exception does not apply in this situation.

. LSA-R.S. 42:1115, provides in pertinent part: "No public servant shall solicit or accept ... any thing of economic value as a gift or gratuity from any person ... if such public servant knows or reasonably should know that such person ... [h]as or is seeking to obtain contractual or other business or financial relationships with the public servant's agency,” or "[h]as substantial economic interests which may be substantially affected by the performance or nonperformance of the public [servant's] official duty.”