FREDERICKS HOMBERG WICKER, Sd Hoc Judge.
| ^Corbett L. Ourso, Jr. (Ourso) appeals a December 15, 2004 ruling by the Louisiana Board of Ethics (Board) decreeing he vio *750 lated La. R.S. 18:1505.1(0[1] of the Campaign Finance Disclosure Act (CFDA)[2], and imposing a $4,000.00 civil penalty. We affirm.
In a letter dated May 17, 2004 addressed to Ourso’s counsel, the Board stated that on May 13, 2004, while acting in its capacity as the Supervisory Committee on Campaign Finance Disclosure, it concluded a private investigation into representations contained in a complaint filed with the Board; consequently, the Board ordered that a public hearing be conducted on August 12, 2004 to explore the following charges:
Jai-
That Corbett L. Ourso, a candidate for District Attorney, 21st Judicial District, in the October 5, 2002 election, may have violated Section 1505.1C of the Campaign Finance Disclosure Act (“CFDA”) (La. R.S. 18:1505.1C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his tenth day prior to the primary election report that was filed on September 25, 2002 and is, therefore, subject to civil penalties of $60 a day until an amendment correcting the report is filed, not to exceed $2,000.
II.
That Corbett L. Ourso, a candidate for District Attorney, 21st Judicial District, in the October 5, 2002 election, may have violated Section 1505.1C of the Campaign Finance Disclosure Act (“CFDA”) (La. R.S. 18:1505.1C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his tenth day prior to the general election report that was filed on October 24, 2002 and is, therefore, subject to civil penalties of $60 a day until an amendment correcting the report is filed, not to exceed $2,000.
III.
That Corbett L. Ourso, a candidate for District Attorney, 21st Judicial District, in the October 5, 2002 election, may have violated Section 1505.1C of the Campaign Finance Disclosure Act (“CFDA”) (La. R.S. 18:1505.1C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his 2002 supplemental campaign finance disclosure report that was filed on February 18, 2003 and is, therefore, subject to civil penalties of $60 a day until an amendment correcting the report is filed, not to exceed $2,000.
IV.
That Corbett L. Ourso, a candidate for District Attorney, 21st Judicial District, in the October 5, 2002 election, may have violated Section 1505.1C of the Campaign Finance Disclosure Act (“CFDA”) (La. R.S. 18:1505.1C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his 2003 supplemental campaign finance disclosure report that was filed on February 6, 2004 and is, therefore, subject to civil penalties of $60 a day until an amendment correcting the report is filed, not to exceed $2,000.
At the August 12, 2004 public hearing a Joint Statement of Uncontested Facts was introduced and filed into the record and *751 the parties were instructed to submit briefs within fifteen days and return the matter to the Board’s September 9, [¿2004 meeting. On September 9, 2004 the matter was continued; at the Board’s October 14, 2004 meeting a public hearing was held regarding the charges against Ourso. On December 15, 2004 the Board issued its opinion, finding that the loans to the Ourso campaign, reportedly received from Ourso, were loans from his father; therefore, the failure of Ourso to indicate on four separate campaign finance reports that the loans were from his father constitutes four separate violations of La. R.S. 18:1505.1(C). Noting that violators are subject to civil penalties of $60 a day, not to exceed $2,000.00, for each report on which transactions were inaccurately disclosed, the Board concluded that the interest of the public would be served by the imposition of $1,000.00 for each inaccurately filed report for a total of $4,000.00 civil penalty[3]. A copy of the Board’s written reasons for judgment are attached to this opinion. Ourso appeals.
Judicial review of rulings of the Board is conducted in accordance with the Louisiana Administrative Procedure Act. La. R.S. 42:1148; In re Jefferson Alliance, Inc., 02-0335 (La.App. 1 Cir. 2/14/03), 841 So.2d 15, 16, writ denied, 03-1136 (La.6/20/03), 847 So.2d 1233. The review shall be confined to the record, as developed in the administrative proceedings. La. R.S. 49:964(F); Schmitt v. Louisiana Bd. Of Ethics, 00-0341 (La.App. 1 Cir. 3/28/01), 808 So.2d 524, 525. A reviewing court may reverse or modify the Board’s decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional | nor statutory provisions; (2) in excess of the agency’s statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. La. R.S. 49:964(G); In re Jefferson Alliance, Inc., 841 So.2d at 16-17.
On appeal, Ourso asserts three assignments of error.

Assignment of Error Number 1

The Board committed manifest error when it found that Corbett L. Ourso, Jr. violated the Campaign Finance Disclosure Act because the only evidence before the Board established that the candidate, Ourso, Jr., was the owner of the funds prior to their placement in the campaign account.
The Joint Statement of Uncontested Facts establishes the following. On August 26, 2002, Ourso deposited $20,000.00 into his personal bank account. The funds used for the deposit came from an account standing in the name of Corbett L. Ourso, Sr. (Mr. Ourso, Sr.). Shortly thereafter, On September 3, 2002, Ourso issued a *752 check on his personal account in the same amount, $20,000.00 payable to his campaign account, with the notation “Open campaign account” on the memo line; the bank statement for the campaign account reflects that it was opened on September 3, 2002. On October 1, 2002, Ourso deposited $15,000.00 in his personal account. As with the $20,000.00, the funds used for this deposit came from an account standing in the name of Mr. Ourso, Sr. That same day, Ourso issued a check on his personal account in the same amount, $15,000.00 payable to Ourso’s campaign account with the notation “loan” on the memo line.
Ourso contends that he established that the funds which were transferred from accounts standing in the name of Mr. Our-so, Sr. were his by virtue of an inter vivos trust created by his parents, naming Ourso as the beneficiary and trustee; according to Ourso, the funds were part of this trust.
| fiOurso indicated in the uncontested facts that if called to testify, he and Mr. Ourso, Sr. would state that any and all funds in any account standing in the name of Mr. and Mrs. Corbett L. Ourso, Sr. are, in fact, funds belonging to Ourso and his siblings by virtue of living trusts previously identified and testified to on April 20, 2000 in State of Louisiana Board of Ethics v. Corbett L. Ourso, Jr., Docket Number 9903660, 21st Judicial District Court, Tangipahoa Parish.
In the alternative, Ourso argues that even if the funds were not his by virtue of the trust, they were his by virtue of subsequent, specific manual gifts. He contends that the funds were donated to him to use in whatever way he saw fit; further, the evidence established that after the campaign he withdrew the remaining funds as a partial repayment of his loan to the campaign. Ourso cites the uncontested fact that on October 9, 2002 he issued a check on his campaign account in the amount of $6,517.90 with the notation “partial reimbursement loan” in the memo line.
The Board asserts that to conclude that the true source of the funds was Ourso would lead to an absurd result; it would support the pretense that a candidate could receive funds, which could otherwise be classified as a “contribution” or “loan,” deposit the funds into his personal checking account, transfer the funds to his campaign account, and report the funds as a personal contribution/loan. The Board contends that such a result would defeat two of the purposes of the CFDA, accurate reporting and contribution limits; a candidate would be allowed to completely circumvent the contribution limits by categorizing third-party transfers which exceed the limits as loans from the candidate.
At the April 20, 2000 proceeding, Ourso’s father testified that in April of 1998 he prepared a will, leaving everything to his children. Additionally, he created a trust, making his four children, including Ourso, beneficiaries. Ourso |7was also named as trustee. Ourso testified on April 20, 2000 that initially the trust was created without his knowledge. Upon its completion, his parents “gave” it to him for “safe keeping” and to keep him informed. However, the record does not indicate exactly what and when assets were placed in the trust. Further, as the statement of uncontested facts specifies, the funds for the two deposits in question came from an account standing in the name of Ourso’s father. Additionally, though Ourso contends that the funds were a manual gift donated to him to use in whatever way he saw fit, the record establishes that the relevant transactions were contiguous and involved the exact same amounts. Specifically, Ourso first deposited funds from the Ourso, Sr. account into his personal account and then transferred said funds by depositing the exact same amounts into his campaign ac *753 count, on the same day as the initial deposit in one case, and shortly thereafter in another. Therefore, we find this assignment of error without merit.

Assignment of Error Number 2

The Board committed manifest error when it held that Corbett L. Ourso, Jr. failed to accurately disclose the receipt of loans from Corbett L. Ourso, Sr. as there was no evidence of any loans from Corbett L. Ourso, Sr.
Ourso was found by the Board to have violated La. R.S. 18:1505.1(0) for failing to accurately disclose the receipt of loans from Corbett L. Ourso, Sr. in four separate reports. La. R.S. 18:1505.1(0 provides that failure to disclose or failure to disclose accurately any information required to be reported shall constitute a violation. In the present case, it is Ourso who characterized the $35,000.00 in question as a loan in his reports. The Board’s charges do not dispute Ourso’s assertion in his reports that the transactions in question were loans. Rather, the charges dispute the accuracy of the reported source of the loans; Ourso reported that he was the source of the $35,000.00 loan, whereas the Board charged that Mr. Ourso, Sr. was the source. Essentially, Ourso is now claiming manifest error | ¡¡because the Board accepted his characterization of the funds as loans. We find this assignment of error without merit.

Assignment of Error Number 3

The Board of Ethics committed manifest error when it failed to apply the doctrine of equitable estoppel to prohibit action against Ourso Jr. for actions he took in justifiable reliance upon statements made by Counsel for the Board to Judge Hughes at the prior hearing.
Ourso and Mr. Ourso, Sr. were both present for and heard an exchange between Judge Jefferson Davis Hughes and Mr. Gray Sexton, counsel for the Board, at the April 20, 2000 hearing in State of Louisiana Board of Ethics v. Corbett L. Ourso, Jr., Docket Number 9903660, 21st Judicial District Court, Tangipahoa Parish. The following is the exchange at issue:
COURT: And I keep wondering, if it is the father’s money and not the candidate’s money to start with, why he couldn’t just say, “Son here’s $50,000. You can either (A) go buy a boat, (B) go around the world or (C) spend it on your campaign” and then he, himself, the individual, could put it into his campaign. I don’t think that would be wrong. Again, I don’t want to say anything that’s going to get me in trouble, but I think that would be okay.
SEXTON: And for what it’s worth, Your Honor, we agree with you.
Ourso contends that the doctrine of equitable estoppel applies in this matter because, absent Mr. Sexton’s above statement, he and his father “probably” would have taken a different course of action regarding the transfers.
The doctrine of equitable estop-pel is defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Zeringue v. Wireways, Inc., 97-0856 (La.App. 1 Cir. 4/8/98), 714 So.2d 13, 17, writ denied, R98-1257 (La.6/19/98), 721 So.2d 475. A party invoking the doctrine of equitable estoppel must prove the facts upon which the estop-pel is based and must establish all three elements of estoppel: 1) a representation by action or word; 2) justifiable reliance on the representation; 3) a detrimental change in one’s position because of the *754 reliance. Duthu v. Allements’ Roberson Mach. Works, Inc., 393 So.2d 184, 186 (La.App. 1 Cir.1980). It is well-settled that estoppels are not favored in Louisiana. Zeringue v. Wireways, Inc., 714 So.2d at 17. It is also well-settled that a party having the means readily and conveniently available to determine the true facts, but who fails to do so cannot claim estoppel. John Bailey Contractor, Inc. v. State, Through Dept. of Transp. and Development, 439 So.2d 1055, 1060 (La.1983).
In the present case, Ourso chose to rely on a brief conversation, to which he was not a party, regarding a hypothetical situation, rather than exercising his right to directly seek the opinion of the Board. Therefore, we find this assignment of error without merit.
DECREE
Based on the foregoing, the judgment appealed from is affirmed. All costs of this appeal are assessed to Ourso.
AFFIRMED.
LOUISIANA BOARD OF ETHICS
OPINION NO.: 2003-529
DATE: December 15, 2004
RE: In the matter of Corbett L. Ourso, Jr.
| mThe Louisiana Board of Ethics (the “Board”), at its October 14, 2004 meeting, conducted a public hearing for the purpose of exploring the following charges:
I.
That Corbett L. Ourso, Jr., a candidate for District Attorney, 21st Judicial District, in the October 5, 2002 election, may have violated Section 1505.1C of the Campaign Finance Disclosure Act (CFDA) (La. R.S. 18:1505.10) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his tenth day prior to the primary election report that was filed on September 25, 2002 and is, therefore, subject to civil penalties of $60 a day until an amendment correcting the report is filed, not to exceed $2,000.
II.
That Corbett L. Ourso, Jr., a candidate for District Attorney, 21st Judicial District, in the October 5, 2002 election, may have violated Section 1505.1C of the Campaign Finance Disclosure Act (CFDA) (La. R.S. 18:1505.1C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his tenth day prior to the general election report that was filed on October 24, 2002 and is, therefore, subject to civil penalties of $60 a day until an amendment correcting the report is filed, not to exceed $2,000.
III.
That Corbett L. Ourso, Jr., a candidate for District Attorney, 21st Judicial District, in the October 5, 2002 election, may have violated Section 1505.1C of the Campaign Finance Disclosure Act (CFDA) (La. R.S. 18:1505.1C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his 2002 supplemental campaign finance disclosure report that was filed on February 18, 2003 and is, therefore, subject to civil penalties of $60 a day until an amendment correcting the report is filed, not to exceed $2,000.
IV.
That Corbett L. Ourso, Jr., a candidate for District Attorney, 21st Judicial District, in the October 5, 2002 election, may have violated Section 1505.1C of the *755 Campaign Finance Disclosure Act (CFDA) (La. R.S. 18:1505.10) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his 2003 supplemental campaign finance disclosure report that was filed on February 6, 2004 and is, therefore, subject to civil penalties of $60 a day until an amendment correcting the report is filed, not to exceed $2,000.
InOn the basis of the evidence and testimony adduced, the Board now makes the following essential:
I.

JOINT STATEMENT OF UNCONTESTED FACTS

1.Corbett Ourso, Jr. was a candidate for District Attorney for the 21st Judicial District for the parishes of Tangipahoa, Livingston and St. Helena in the October 2002 election.
2. In connection with the election Cor-bett Ourso, Jr. filed certain reports with The Louisiana Board of Ethics functioning as the Supervisory Committee on Campaign Finance Disclosure (hereinafter “Supervisory Committee”). LSA-R.S. 18:1511.1.
3. Included among the transactions contained in those reports were the following two (2) transactions which are the subject of this hearing:
a. A TWENTY THOUSAND AND NO/100 ($20,000.00) DOLLAR loan reported to the campaign by the candidate on or about September 3, 2002.
b. A FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLAR loan reported to the campaign by the candidate on or about October 1, 2002.
4. Corbett Ourso, Jr. has provided the Board with copies of checks and/or statements for the following bank accounts:
hsiBank Account Number Name Period Doc. Number
AmSouth Bank 9201771965 Corbett Ourso, Jr. 12/12/01-12/10/02 0001-0027
Parish National Bank 81036752 Corbett L. Ourso, Jr. 9/3/02-11/13/02 0028-0033
5. The AmSouth Bank account is the candidate’s personal account.
6. The Parish National Bank account is the campaign account
7. The above identified records establish the following:
a. On August 26, 2002, Corbett Our-so, Jr. deposited $20,000.00 into his personal account with Am-South Bank. The funds used for the deposit came from an account standing in the name of Corbett Ourso, Sr. The deposit is reflected in statement for the period August 13, 2002 through September 11, 2002;
b. On September 3, 2002, Corbett Ourso, Jr. Issued check number 1063 on his personal account with AmSouth Bank in the amount of $20,000.00 payable to Parish National Bank with the notation “Open campaign account” in the memo line;
c. The Parish National Bank statement for the period 9/03/02 thru 9/16/02, reflects that the campaign account was opened on September *756 3, 2002 with an initial deposit of $20,000.00.
d. On October 1, 2002, Corbett Our-so, Jr. deposited $15,000.00 in his personal account. The funds used for the deposit came from an account standing in the |13name of Corbett Ourso, Sr. That deposit is reflected in the statement for the period September 12, 2002 through October 11, 2002.
e. On October 1, 2002, Corbett Our-so, Jr. issued check number 1076 on his personal account in the amount of $15, 000.00 payable to the Corbett Ourso Campaign with the notation “loan” on the memo line.
f. On October 1, 2002, Corbett Our-so, Jr. deposited $15,00.00 into his campaign account with Parish National Bank. That deposit is reflected on the statement for the period 9/17/92 thru 10/16/02.
8. Corbett Ourso, Jr. received a $20,000.00 from Corbett Ourso, Sr. on September 3, 2002.
9. Corbett Ourso, Jr. received a $15,000.00 check from Corbett Our-so, Sr. on October 2, 2002
10. Corbett Ourso, Jr. was unsuccessful in his campaign for district attorney.
11. Corbett Ourso, Jr. closed his campaign account on November 1, 2002.
12. On October 9, 2002, Corbett Ourso, Jr. issued check number 723 on his campaign account with Parish National bank to “Corbett L. Ourso, Jr. in the amount of $6,517.90 with the notation “partial reimbursement loan” in the memo line.
13. On October 9, 2002, Corbett Ourso, Jr. deposited $6,517.90 into his personal account with AmSouth Bank. The deposit is reflected on the statement for the period “September 12, 2002 through “October 11, 2002.
11414. If called to testify, Corbett L. Our-so, Jr. (the candidate) and Corbett L. Ourso, Sr. (the father) would state that the funds deposited into the campaign account were the candidate’s and therefore not subject to any limitation on the amount which may be donated or loaned to a campaign.
15. If called to testify, Corbett L. Our-so, Sr. And Corbett L. Ourso, Jr., would state that any and all funds in any account standing in the name of Mr. and Mrs. Corbett L. Ourso, Sr. are, in fact, funds belonging to Corbett L. Ourso, Jr. And his siblings by virtue of those certain living trusts previously identified and testified to on April 20, 2000, in the case of State of Louisiana Board of Ethics v. Corbett L. Ourso, Jr. bearing docket number 9903660 of the 21st Judicial District Court for the Parish of Tangipahoa. In the matter both Corbett L. Ourso, Jr. and Corbett L. Ourso, Sr. testified that Mr. and Mrs. Corbett L. Ourso, Sr. had transferred their entire estates to Corbett L. Ourso, Jr. as trustee and beneficiary of their respective living trust.
16. If called to testify Corbett L. Our-so, Jr. and Corbett L. Ourso, Sr. would state that before any funds were transferred from an account standing in the name of Corbett Ourso, Sr. to Corbett Ourso, Jr. they took the additional safeguard of following a procedure suggested by Judge Jefferson Davis Hughes at the April 20, 2000 hearing and approved by Gray Sexton, counsel *757 for the Board of Ethics in the following exchange:
|1SBY THE COURT: And I keep wondering, if it is the father’s money and not the candidate’s money to start with, why couldn’t he just say, “Son here’s $50,000.00 you can either (A) go buy a boat, (B) go around the world or (C) spend it on your campaign?” And then he himself, the individual, could put it into his campaign. I didn’t think that would be wrong. Again, I don’t want to say anything that would get me into trouble, but I think that would be okay.
BY MR. SEXTON: And for what its worth. Your Honor, we agree with you. This exchange may be found at Transcript page 94-95.
17. Corbett L. Ourso, Jr. and Corbett L. Ourso, Sr. were both present for and heard this exchange between the Court and counsel for the Board of Ethics.
18. No advisory opinion was requested by or rendered to either Corbett L. Ourso, Jr. or Corbett L. Ourso, Sr. that following the procedure set forth in paragraph 19 above, was prohibited under the given circumstances. Neither Corbett Ourso, Jr. nor Corbett Ourso, Sr. were advised that they could not rely upon the statements made by Mr. Sexton in State of Louisiana Board of Ethics v. Corbett L. Ourso, Jr., bearing docket number 9908660 of the 21st Judicial District Court for the Parish of Tangipahoa.
19. If called to testify Corbett L. Our-so, Jr. and Corbett L. Ourso, Sr. would state that the procedure suggested by Judge Hughes and approved by Gray Sexton, counsel for the Board of Ethics, was followed each and every time any funds were taken from an |1fiaccount standing in the name of the candidates’ parents, Mr. and Mrs. Cor-bett L. Ourso, Sr. and given to Corbett L. Ourso, Jr.
20.The parties agree that the transcript of the proceedings on April 20, 2000 in the matter entitled of State of Louisiana Board of Ethics v. Corbett L. Ourso, Jr. bearing docket number 9903660 of the 21st Judicial District Court for the Parish of Tangipahoa shall be admissible in these proceedings without a stipulation as to its relevancy.
II.
APPLICABLE LAW
At issue in this case are Sections 1505.1 C of the Campaign Finance Disclosure Act.
Section 1505.1 C provides that failure to disclose or failure to disclose accurately any information required to be reported is a violation.
Section 1505.4 B provides:
B. Any candidate, the treasurer or chairman of any political committee, or any other person required to file reports under this Chapter who knowingly and willfully fails to disclose, or knowingly and willfully fails to accurately disclose, any information required by this Chapter to be disclosed in the reports required herein, may be assessed a civil penalty for each day until such information is disclosed by amendment to the appropriate report of such candidate, political committee, or other person. “Knowingly and willfully”, for purposes of this Subsection, means conduct which could have been avoided through the exercise of due diligence. Such penalties shall be as provided in Subsection A above.
*758 Section 1505.4 A provides in pertinent part:
A. (1) Any candidate, the treasurer or chairman of a political committee, or any other person required to file any reports under this |17Chapter, who knowingly fails to file or who knowingly fails to timely file any such reports as are required by this Chapter may be assessed a civil penalty as provided in R.S. 42:1157 for each day until such report is filed.
(2)(a) The amount of such penalty may be:
* :|: *
(ii) Sixty dollars per day, not to exceed two thousand dollars, for any candidate for district office and any treasurer or chairman of any political committee designated as a principal campaign committee or subsidiary committee of such a candidate.
III.
OPINION
It is the opinion of the Board that Cor-bett L. Ourso, Jr. violated Section 1505.1 C of the CFDA when he failed to accurately disclose the receipt of loans from Corbett L. Ourso, Sr. on his campaign finance disclosure reports. The Board is of the opinion that the loans to the Corbett L. Ourso, Jr. campaign reportedly received from Corbett L. Ourso, Jr. were loans from Corbett L. Ourso, Sr. Therefore, it is the Board’s opinion that the failure of Corbett L. Ourso, Jr. to indicate on four separate campaign finance disclosure reports that the loans were from Corbett L. Ourso, Sr. constitutes four separate violations of Section 1505 of the CFDA.
Section 1505 provides that failure to accurately disclose required information is a violation of the CFDA, and violators are subject to civil penalties of $60 a day not to exceed $2,000 for each report on which transactions were inaccurately disclosed. In this particular situation, given the facts outlined above, it is the conclusion of the Board that the interest of the public would be served by the imposition of $1,000 for each inaccurately filed report for a total $4,000 civil penalty upon 11sCorbett L. Our-so, Jr. for violating Sections 1505 of the CFDA.
IV.
DECREE AND ORDER
IT IS DECREED that Corbett L. Our-so, Jr. violated Section 1505.1 C of the Campaign Finance Disclosure Act (CFDA) (La. R.S. 18:1505.1 C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his tenth day prior to the primary election report that was filed on September 25, 2002.
IT IS DECREED that Corbett L. Our-so, Jr. violated Section 1505.1C of the Campaign Finance Disclosure Act (CFDA) (La. R.S. 18:1505.1 C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his tenth day prior to the general election report that was filed on October 24, 2002.
IT IS DECREED that Corbett L. Our-so, Jr. violated Section 1505.1C of the Campaign Finance Disclosure Act (CFDA) (La. R.S. 18:1505.1 C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his 2002 supplemental campaign finance disclosure report that was filed on February 18, 2003.
IT IS DECREED that Corbett L. Our-so, Jr. violated Section 1505.1 C of the Campaign Finance Disclosure Act (CFDA) (La. R.S. 18:1505.1 C) by failing to accurately disclose the receipt of a loan from Corbett L. Ourso, Sr. on his 2003 supple *759 mental campaign finance disclosure report that was filed on February 6, 2004.
IT IS ORDERED that a $4,000 civil penalty be imposed upon Corbett L. Our-so, Jr., payable to the Treasurer of the State of Louisiana.
|19By Order of the Board this 15th day of December 2004.
/s/ Robert L. Roland ROBERT L. ROLAND, Chairman
Ml Absent and did not participate JOHN W. GREENE, Judge
/s/ R.L. Hargrove, Jr. R.L. HARGROVE, JR.
/s/ Joseph Maselli JOSEPH MASELLI
/s/ Absent and did not participate DELGADO SMITH, Ascension
/s/ Edwin O. Ware EDWIN O. WARE
/s/ T.O. Perry, Jr. T.O. PERRY, JR., Vice-Chairman
/s/ Absent and did not participate E.L. GUIDRY, JR., Judge
/s/ Michael J. Kantrow, Sr. MICHAEL J. KANTROW, SR.
/s/ Did not participate HENRY C. PERRET, JR.
/s/ Dr. Dolores Spikes DR. DOLORES SPIKES

. La. R.S. 18:1505.1(C) of Title 18 “Louisiana Election Code,” Chapter 11 "Election Campaign Finance,” "Part V. Prohibited Practices and Limitations; Penalties,” provides:
"Failure to disclose or failure to disclose accurately any information required to be reported by this Chapter shall constitute a violation of this Chapter.”

. La. R.S. 18:1481, et seq.

. La. R.S. 18:1505.4 provides, in pertinent part:
A. (1) Any candidate, the treasurer or chairman of a political committee, or any other person required to file any reports under this Chapter, who knowingly fails to file or who knowingly fails to timely file any such reports as are required by this Chapter may be assessed a civil penalty as provided in R.S. 42:1157 for each day until such report is filed.
(2)(a) The amount of such penalty may be:
(ii) Sixty dollars per day, not to exceed two thousand dollars, for any candidate for district office and any treasurer or chairman of any political committee designated as a principal campaign committee or subsidiary committee of such a candidate.