STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0164

BOARD OF ETHICS

VERSUS

CHRIS C. SMITH

Judgment Rendered:     NOV 1 5 2021

* * * * * *

On Appeal from the Ethics Adjudicatory Board
State of Louisiana, Division of Administrative Law

Number 2019-15454-ETHICS-A

Ethics Adjudicatory Board - Panel A
Administrative Law Judges
A. Brock Avery, Sherlyn Shumpert, Lance B. Vinson

* * * * * *

Kathleen M. Allen
Tracy M. Barker
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellant
Louisiana Board of Ethics

Chris C. Smith
Arcadia, Louisiana

Defendant/Appellee
In Proper Person

* * * * * *

BEFORE: McCLENDON, WELCH AND THERIOT, JJ.

**McCLENDON, J.**

The Louisiana Board of Ethics (BOE), in its capacity as the Supervisory Committee on Campaign Finance,[1] seeks review of a decision of the Ethics Adjudicatory Board (EAB), which held that the EAB was authorized to assess additional penalties against a candidate for failing to file campaign finance disclosure reports. For the following reasons, we reverse the decision of the EAB that imposed additional penalties against the candidate.

## FACTS AND PROCEDURAL BACKGROUND

Chris Smith unsuccessfully ran for mayor of the Town of Arcadia in 2018. In connection with his campaign for mayor, Mr. Smith was provided with a schedule of report filing dates pursuant to the Louisiana Campaign Finance Disclosure Act, LSA-R.S. 18:1481, *et seq.* (the Act), which included a report due on the tenth day prior to the primary election (10-P) and a report due on the tenth day prior to the general election (10-G).[2] Mr. Smith did not file either report, and the BOE imposed a $1,000.00 penalty for each failure to file a required report, pursuant to LSA-R.S. 18:1505.4A(1) and (2)(a)(iii).[3] Mr. Smith did not pay the late fees, and the BOE requested a hearing before the EAB to determine if Mr. Smith was subject to additional penalties.[4]

---

[1] See LSA-R.S. 18:1511.1 (establishing the Supervisory Committee on Campaign Finance Disclosure and providing that the BOE shall function as the supervisory committee to administer and enforce the provisions of the Campaign Finance Disclosure Act) and LSA-R.S. 18:1483(19) (defining the supervisory committee as the BOE when functioning as the Supervisory Committee on Campaign Finance Disclosure to enforce the provisions of the Campaign Finance Disclosure Act).

[2] The office of Mayor of Arcadia is an "any other" level office, which requires the filing of certain campaign finance reports if the candidate for said office spends more than $2,500.00 or receives a contribution in excess of $200.00. See LSA-R.S. 18:1484(2). Because Mr. Smith received contributions in the amount of $250.00 and $1,000.00, the requirement to file with the BOE campaign disclosure reports by the deadlines in the Act was triggered.

Further, LSA-R.S. 18:1495.4B(4) provides that each candidate shall file a report no later than the tenth day prior to the primary election that shall be complete through the twentieth day prior to the primary election. Mr. Smith was required to file the 10-P campaign finance report by October 29, 2018, in connection with the November 6, 2018 election. Additionally, LSA-R.S. 18:1495.4B(5) provides that each candidate shall file a report no later than the tenth day prior to the general election that shall be complete through the twentieth day prior to the general election. Mr. Smith was required to file the 10-G campaign finance report by November 28, 2018, in connection with the general election.

[3] Louisiana Revised Statutes 18:1505.4A(1) and (2)(a)(iii) provide:

A. (1) Any candidate, the treasurer or chairman of a political committee, or any other person required to file any reports under this Chapter, who knowingly fails to file or who knowingly fails to timely file any such reports as are required by this Chapter may be assessed a civil penalty as provided in R.S. 18:1511.4.1 for each day until such report is filed.

(2)(a) The amount of such penalty may be:

2

The hearing was conducted on March 13, 2020, before the EAB, Panel A.[5] Counsel for the BOE was present, but Mr. Smith, although given proper notice, failed to appear for the hearing. Counsel for the BOE presented the case and offered ten exhibits at the hearing, which were admitted into evidence, and the record was closed. The EAB concluded that the BOE proved by clear and convincing evidence that Mr. Smith knowingly failed to file the 10-P and 10-G reports required under the Act, thereby authorizing the BOE to assess statutory penalties for the failure to meet the Act's reporting requirements. The EAB further found that nothing in evidence rebutted the presumption of Mr. Smith's knowing failure to file the reports.[6]

The EAB affirmed both penalties of $1,000.00. The EAB then referenced Mr. Smith's lack of responsiveness to the correspondence of the BOE and to the adjudication hearing before the EAB, finding that it suggested little motivation on Mr. Smith's part to come into compliance with the reporting requirements of the Act. Therefore, under these circumstances, and stating that Mr. Smith had a relatively small campaign with receipts of less than $4,000.00, the EAB determined that an additional penalty of $2,000.00 for each violation was warranted. The EAB further stated that those penalties would be waived if Mr. Smith "file[d] both outstanding penalties" within sixty days of the EAB's order. The Decision and Order were signed on May 1, 2020.

Thereafter, the BOE filed a Request for Rehearing and Reconsideration, asserting that the Decision and Order exceeded the authority of the EAB and was therefore contrary to law. The BOE contended that it, as the supervisory committee on campaign

---

* * *

(iii) Forty dollars per day, not to exceed one thousand dollars, for any candidate for all other offices and any treasurer or chairman of any political committee designated as a principal campaign committee or subsidiary committee of such a candidate.

Additionally, LSA-R.S. 1511.4.1A provides that "[t]he staff of the supervisory committee may assess and issue a final order for the payment of civil penalties for knowingly failing to file or knowingly failing to timely file in accordance with R.S. 18:1505.4 and rules adopted by the supervisory committee."

[4] See LSA-R.S. 18:1505.4A(4)(a) and (b) (providing that the BOE may impose on a candidate required to file a report under the Act, but who does not file such a report after a certain number of days after the report is due and after an adjudicatory hearing by an adjudicatory panel of the EAB, an additional civil penalty up to ten thousand dollars).

[5] Louisiana Revised Statutes 42:1141.5A provides that the EAB shall sit in rotating panels and that the determination of the majority of the panel in a particular case shall be the determination of the EAB.

[6] See LSA-R.S. 18:1505.1 (setting forth that the failure to provide any required report within three days after the final date for filing shall be presumptive evidence of intent not to file the report).

3

finance, is the only body that may impose additional civil penalties, not the EAB. Additionally, the BOE maintained that the EAB erred in affirming the late fee orders issued to Mr. Smith, as this issue was neither pending before the EAB nor under the EAB's jurisdiction.

The EAB granted reconsideration in part and denied reconsideration in part. The EAB determined that the BOE's assessment orders were before it as factual components of the case and did not need to be affirmed. While the EAB found that the affirming of those penalty assessments was inconsequential, as it did not affect the amount or enforceability of the penalty assessments, it nevertheless found that, as a technical matter, it should not have affirmed the BOE's penalty assessments. Therefore, the EAB, upon reconsideration, amended and revised the Decision and Order to remove the language affirming the penalty assessments.

However, with regard to the assessment of additional penalties, the EAB determined that the statutory authority granted to it extends to the determination of the amount of additional penalties and concluded that the issue of additional penalties was properly before and adjudicated by the EAB. The EAB signed its order regarding the Request for Rehearing and Reconsideration on August 10, 2020, and the BOE appealed.[7]

## ASSIGNMENTS OF ERROR

In its appeal, the BOE assigns the following as error:

1. The EAB erred as a matter of law by concluding that its statutory authority included the ability to assess penalties or other sanctions in matters involving the failure to file finance disclosure reports under the Campaign Finance Disclosure Act; and

2. The EAB erred as a matter of law when it ordered the assessment of an additional penalty of $2,000.00 against Mr. Smith for each untimely campaign disclosure report, and the waiver of such penalty if said reports were subsequently filed, when the EAB lacked the statutory authority under the Campaign Finance Disclosure Act.

---

[7] We note that Mr. Smith has not participated in any way in this appeal.

## STANDARD OF REVIEW

The BOE filed this appeal pursuant to the authority set forth in LSA-R.S. 42:1142A(2)(a). This statute, which governs appeals under the Code of Governmental Ethics,[8] provides:

> Upon the unanimous vote of its members present and voting, the Board of Ethics may appeal a final decision of the Ethics Adjudicatory Board to the Court of Appeal, First Circuit, within thirty days after the signing and transmission of the notice of the final decision, or if a rehearing is requested, within thirty days after the transmission of the notice of the decision of the Ethics Adjudicatory Board on the rehearing. Only questions of law in a final decision may be appealed pursuant to this Paragraph, and the appeal shall be limited to the record created at the hearing before the adjudicatory panel of the Ethics Adjudicatory Board. For purposes of this Paragraph, "final decision" means the decision and order of the adjudicatory panel of the Ethics Adjudicatory Board on the final disposition of the entire matter the Ethics Adjudicatory Board was required to hear.

Because only questions of law in a final decision may be appealed under LSA-R.S. 42:1142A(2)(a), the standard of review herein is *de novo*. See **In re Ferrara Fire Apparatus, Inc.**, 03-0446 (La.App. 1 Cir. 12/31/03), 868 So.2d 762, 764 (on legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a *de novo* review of questions of law and renders judgment on the record).

## DISCUSSION

The BOE, functioning as the Supervisory Committee on Campaign Finance Disclosure, is charged with administering and enforcing the provisions of the Campaign Finance Disclosure Act. See LSA-R.S. 42:1132C.[9] The legislature recognized that the effectiveness of representative government is dependent upon a knowledgeable electorate and the confidence of the electorate in their elected officials. Therefore, the legislature enacted the Act to provide public disclosure of the financing of election

---

[8] Pursuant to the authority of LSA-Const. art. X, sec. 21, the legislature enacted the Code of Governmental Ethics, LSA-R.S. 42:1101, *et seq.,* which provided for the creation of the Louisiana Board of Ethics in LSA-R.S. 42:1132. See **In re Arnold**, 07-2342 (La.App. 1 Cir. 5/23/08), 991 So.2d 531, 536.

[9] Louisiana Revised Statutes 42:1132C provides, in pertinent part that "[t]he Board of Ethics shall administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder with respect to public employees and elected officials, including final decisions of the Ethics Adjudicatory Board. In addition, the Board of Ethics, functioning as the Supervisory Committee on Campaign Finance Disclosure, shall administer and enforce the provisions of Chapter 11 of Title 18 of the Louisiana Revised Statutes of 1950 [LSA-R.S. 18:1481, *et seq.*], and the rules, regulations, and orders issued thereunder."

campaigns and to regulate certain campaign practices. LSA-R.S. 18:1482. See also **In re Hughes**, 03-3408 (La. 4/22/04), 874 So.2d 746, 777.

The central issue in this appeal is whether the EAB has the statutory authority to assess penalties or other sanctions in matters involving the failure to file finance disclosure reports under the Act, including the determination and imposition of additional penalties under LSA-R.S. 18:1505.4A(4)(a) and (b), when a candidate files a 10-P report more than six days late or a 10-G report more than eleven days late. Louisiana Revised Statutes 18:1505.4A(4)(a) and (b) provide:

> (4)(a) For reports required by this Chapter which are required to be filed between the time a candidate qualifies and election day, in addition to any penalties which may be imposed under this Section or any other law, the supervisory committee may impose on any person required to file such a report who has not filed such report by the sixth day after the report is due, after an adjudicatory hearing by an adjudicatory panel of the Ethics Adjudicatory Board conducted in accordance with the provisions of the Code of Governmental Ethics, with notice to the party who is the subject of the hearing, an additional civil penalty not to exceed ten thousand dollars.

> (b) For all other reports required by this Chapter, in addition to any penalties which may be imposed by this Section or any other law, the supervisory committee may impose on any person required to file such a report who has not filed such report by the eleventh day after the report is due, after an adjudicatory hearing by an adjudicatory panel of the Ethics Adjudicatory Board conducted in accordance with the provisions of the Code of Governmental Ethics, with notice to the party who is the subject of the hearing, an additional civil penalty not to exceed ten thousand dollars.

The BOE argues that under this statue it has the sole authority to determine and impose the amounts of the penalties. Nevertheless, the EAB determined that it could assess such penalties, stating that the BOE read the statute in isolation and failed to consider the related statute, LSA-R.S. 42:1141.5.

Louisiana Revised Statutes 42:1141.5B, entitled "Adjudicatory hearings," provides:

> After the hearing, the adjudicatory panel shall determine whether a violation of any provision of law within the jurisdiction of the Board of Ethics has occurred. If the adjudicatory panel determines that a violation has occurred, it shall determine what authorized penalties or other sanctions, if any, should be imposed and shall issue a final decision.

The EAB concluded that when reading the two statutes *in pari materia*, the more reasonable interpretation extends the authority to the EAB to determine the amount of

additional penalties. Otherwise, it stated, the role of the EAB in the adjudication would be ministerial and so limited so as to render the process largely meaningless. Therefore, the EAB found that the issue of additional penalties was properly before and adjudicated by the EAB. We disagree.

Although LSA-R.S. 42:1141.5B seems to indicate that the EAB has authority to impose penalties or sanctions after it has found a violation of any provision of law within the jurisdiction of the BOE, we find that the legislature did not intend for the EAB to have authority to assess additional penalties under the Campaign Finance Disclosure Act. First, the Act gives authority to the BOE, in its capacity as the Supervisory Committee on Campaign Finance, to impose additional penalties under the Act, as provided in LSA-R.S. 18:1505.4A(4)(a) and (b). See also LSA-R.S. 18:1511.1 and 18:1483(19). Further, as previously noted, LSA-R.S. 42:1132C provides, in pertinent part:

> The Board of Ethics shall administer and enforce the provisions of this Chapter and the rules, regulations, and orders issued hereunder with respect to public employees and elected officials, including final decisions of the Ethics Adjudicatory Board. In addition, the Board of Ethics, functioning as the Supervisory Committee on Campaign Finance Disclosure, **shall** administer and enforce the provisions of Chapter 11 of Title 18 of the Louisiana Revised Statutes of 1950, and the rules, regulations, and orders issued thereunder.

(Emphasis added).[10] Additionally, LSA-R.S. 42:1153A provides that upon a determination that an elected official or other person has violated any provision of any law within the jurisdiction of the BOE "**except violations of the Campaign Finance Disclosure Act which shall be governed by Chapter 11 of Title 18 of the Louisiana Revised Statutes of 1950**," the EAB may censure the elected official or person or impose a fine. (Emphasis added). Thus, we find, pursuant to the clear provisions of these statutes, that the legislature gave the BOE, functioning as the Supervisory Committee on Campaign Finance Disclosure, the authority to assess additional penalties under the Act, and not the EAB.

Even if one were to find a conflict between the statutes, our conclusion is supported by the fundamental rule of statutory construction that the more specific

---

[10] Again, Chapter 11 of Title 18, LSA-R.S. 18:1481, *et seq.*, is entitled "Election Campaign Finance." Its short title is the Campaign Finance Disclosure Act. See LSA-R.S. 18:1481.

statute controls over a broader, more general statute. When two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. **Louisiana Board of Ethics v. Purpera**, 20-0801 (La.App. 1 Cir. 2/19/21), 321 So.3d 401, 405, writ denied, 21-00404 (La. 5/11/21), 315 So.3d 868. Moreover, the word "shall" must be given meaning. **Id.**

Therefore, the more general provision giving authority to the EAB to determine violations of law within the jurisdiction of the BOE and to impose penalties and other sanctions upon the determination that a violation has occurred, must be limited by the specific provisions giving the authority to the BOE, functioning as the Supervisory Committee on Campaign Finance Disclosure, to administer and enforce the provisions of the Act. Accordingly, we find that the EAB legally erred when it imposed additional penalties against Mr. Smith.

Additionally, with regard to the BOE's argument that the EAB erred in failing to issue an order finding only that the 10-P report was more than six days late and that the 10-G report was more than eleven days late, we disagree. The BOE had previously made the determination that the 10-P report was more than six days late and the 10-G report was more than eleven days late when it imposed the two $1,000.00 penalties. Moreover, the EAB made findings of fact that Mr. Smith "did not file either the 10-P or the 10-G report by its deadline" and that "[a]s of the date of the hearing, [Mr. Smith] had not filed the 10-P or 10-G reports or paid the assessed fees." As there is no dispute between the adverse parties to this appeal regarding the determination that Mr. Smith failed to timely file the required reports under the Act, there is no controversy for consideration by this court regarding this issue. See **Steiner v. Reed**, 10-1465 (La.App. 1 Cir. 2/11/11), 57 So.3d 1188, 1192. Moreover, to the extent the BOE seeks review of these factual determinations, only questions of law in a final decision may be appealed pursuant to LSA-R.S. 42:1142A(2)(a). See **Louisiana Bd. of Ethics ex rel. Empower PAC**, 13-1841 (La.App. 1 Cir. 5/2/14), 145 So.3d 398, 401. Accordingly, we do not consider this argument of the BOE.

8

## CONCLUSION

For the above reasons, we reverse the decision of the Ethics Adjudicatory Board that held that the Ethics Adjudicatory Board was authorized to assess additional penalties against a candidate for failing to file required campaign finance disclosure reports. Costs of this appeal in the amount of $485.25 are assessed against the Ethics Adjudicatory Board.

## DECISION OF ETHICS ADJUDICATORY BOARD REVERSED.